# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
        Plaintiff,

    v.                                                  Case No. 06-C-0715

MANAGEMENT HOSPITALITY OF
RACINE, INC., et al.,
        Defendants.

## DECISION AND ORDER

The Equal Employment Opportunity Commission ("EEOC") brought this action on behalf of two servers, Katrina Shisler and Michelle Powell, who were employed at an IHOP franchise in Racine, Wisconsin (the "Racine IHOP"), alleging that the servers were sexually harassed in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. A jury found that Shisler and Powell's work environment was hostile or abusive and that defendants are liable for this harassment. Following the verdict, I entered an injunction against defendant Flipmeastack, Inc. ("Flipmeastack") that, among other things, required Flipmeastack to post a notice informing employees of the jury's verdict in a conspicuous location at all IHOP restaurants under its management. Flipmeastack has appealed my order granting the injunction, and before me now is its motion to stay enforcement of the injunction pending appeal.

Under Federal Rule of Civil Procedure 62(c), a court may in its discretion stay enforcement of an injunction pending appeal. In determining whether to grant a stay, I consider factors similar to those governing preliminary injunctions: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether

the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. Hilton v. Braunskill, 481 U.S. 770, 776 (1987).

Although the injunction requires Flipmeastack to do things besides post a notice of the jury's verdict in a place where all employees can see it, the notice requirement is the only part of the injunction which Flipmeastack claims would cause it irreparable harm if enforced pending appeal. Most of Flipmeastack's irreparable-harm arguments focus on its claim that it has no authority to post a notice of the verdict in all restaurants under its management because the restaurants are owned not by Flipmeastack but by independent third parties – specifically, corporations formed and controlled by Salauddin Janmohammed, the husband of Flipmeastack's president, Victoria Janmohammed. Flipmeastack is concerned that if these third parties forbid it from posting the notice, Flipmeastack and Victoria Janmohammed could be held in contempt for reasons beyond their control.

However, as explained in my decision granting the injunction, Flipmeastack exercises total control over the operations of its client restaurants. When Salauddin Janmohammed opens an IHOP, he hires Flipmeastack to staff the restaurant and supervise its day-to-day operation without any input from him or any other officer or employee of his various corporations. Flipmeastack hires the general managers of each restaurant and supervises them through district managers employed by Flipmeastack. These district managers have authority to hire and fire store-level employees (e.g., servers, cooks, store managers and assistant managers) without consulting anyone from the corporation that owns the restaurant. Moreover, Flipmeastack formulates and monitors

2

compliance with all policies governing the operations of each restaurant, such as employee training, what vendors to use when purchasing food, and store promotions.

Given the total control that Flipmeastack exercises over each of its client restaurants, I have no reason to think that anyone from any of the third-party corporations would interfere with Flipmeastack's attempt to comply with the injunction by posting notice of the verdict in, say, the break room of each restaurant. In any event, Flipmeastack has not presented evidence indicating that any of its client restaurants would interfere with its attempt to comply with the injunction, and so at this point its fears over being held in contempt based on circumstances beyond its control are entirely speculative. Moreover, to the extent that the EEOC attempts to hold Flipmeastack in contempt for failing to post a notice after one of its client restaurants interferes with its ability to do so, I can take this interference into account when deciding whether contempt sanctions are warranted.[1] Thus, the possibility that one of Flipmeastack's client restaurants will interfere with its ability to comply with the injunction does not create a risk of irreparable harm.

Flipmeastack also claims that requiring it to post notice of the verdict will cause other forms of irreparable harm. First, it argues that requiring Flipmeastack to post the notice would harm its business relationships with its client restaurants. However, Flipmeastack

---

[1]Flipmeastack should not read this last sentence as an invitation to encourage one of its client restaurants to prevent Flipmeastack from posting the notice. If Flipmeastack does claim that one of its clients is interfering with its ability to post notice, I will require Flipmeastack to produce proof through the testimony of an officer or other agent of the interfering corporation. If I determine that the client's refusal was based on Flipmeastack's encouragement or is in some other way a sham, I will institute contempt proceedings against both Flipmeastack and the client restaurant. See Blockowicz v. Williams, 630 F.3d 563, 567 (7th Cir. 2010) (court has power to bring nonparties within scope of the injunction and hold those nonparties in contempt when they aid and abet an enjoined party's violation of the injunction).

does not explain in concrete terms how posting the notice would harm its business relationships, and I find this claim of irreparable harm incredible given that, so far as the record reveals, all of Flipmeastack's business relationships are with companies owned and controlled by Victoria Janmohammed's husband. Second, Flipmeastack argues that requiring it to post notice would "harm employee morale, decrease the efficiency of the operation, negatively affect the restaurant's reputation, and damage the restaurant's relationship with corporate IHOP." (Motion to Stay at 3.) Again, however, it does not provide concrete examples of how the notice would cause these harms. The verdict itself is a matter of public record, and so Flipmeastack has no legitimate interest in preventing others from learning about it. To the extent it is concerned about employee morale, it could provide reassurance by informing all employees that it is taking steps to ensure that what happened to Ms. Shisler and Ms. Powell will not be allowed to happen to other employees. And it is not clear to me how the notice could negatively affect the reputations of Flipmeastack's clients or their relationships with corporate IHOP, since the notice does not say that the clients themselves violated Title VII or did anything else wrong. Accordingly, I conclude that requiring Flipmeastack to post notice of the verdict in all restaurants under its management would not cause irreparable harm.

I also conclude that Flipmeastack has little likelihood of success on the merits of its appeal. Although Flipmeastack raises a number of issues on appeal, the only issue raised in its motion to stay the injunction is whether Flipmeastack could be held liable for the sexual harassment that occurred at the Racine IHOP under the doctrine providing that an entity that exercises "control" over the workplace can be held liable as an "employer" under Title VII. See EEOC v. Illinois, 69 F.3d 167, 169 (7th Cir. 1995). Flipmeastack argues that

because the EEOC argued its post-verdict motion under the "single employer" theory rather than the control theory, I committed reversible error by employing the control theory rather than the single-employer theory. In support of this argument, Flipmeastack cites <u>Hicks v. Midwest Transit, Inc.</u>, 500 F.3d 647 (7th Cir. 2007) and <u>Old Republic Insurance Co. v. Employers Reinsurance Corp.</u>, 144 F.3d 1077, 1080 (7th Cir. 1998).

Flipmeastack cites <u>Hicks</u> for the proposition that arguments not raised in the district court are waived on appeal. 500 F.3d at 652. This proposition is generally true, but in the present case the control argument <u>was</u> raised in the district court, albeit by the judge rather than a party. <u>Hicks</u> does not imply that when the judge decides a case based on an argument not raised by the parties the prevailing party is precluded from defending the judge's reasoning on appeal, and the only case that I have found on this topic is to the contrary. See <u>Blagojevich v. Gates</u>, 519 F.3d 370, 371 (7th Cir. 2008) (where district court raises an issue sua sponte and the beneficiary of the ruling embraces the district court's reasoning on appeal, the court of appeals must address the issue).

Flipmeastack cites <u>Old Republic</u> for the proposition that a district court cannot grant relief to a party based on a "theory" that was not raised at trial. 144 F.3d at 1080. However, the context of <u>Old Republic</u> makes clear that by "theory" the court meant "claim for relief" or "grievance" rather than "legal theory." In <u>Old Republic</u>, the question was whether the district court could award damages post-trial for breach of contract when the plaintiff never pleaded a claim based on the contract that was supposedly breached and did not assert a claim based on that contract until after trial. <u>Id.</u> at 1080-81. In the present case, the EEOC in its complaint alleged that Flipmeastack was liable for the sexual harassment that occurred at the Racine IHOP. Although the precise legal theory the

EEOC pleaded (single employer) was not the theory I ultimately accepted (control), parties are not required to plead legal theories, and so the failure to plead the right legal theory was not fatal. Rabe v. United Air Lines, Inc., 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error.").

To be sure, the EEOC's failure to argue the right legal theory in later stages of the case would have been a problem had it prejudiced Flipmeastack's ability to present evidence in opposition to the theory. And in this regard Flipmeastack contends that had it known that I would consider the control theory during post-verdict motions, it would have presented additional evidence showing that Flipmeastack did not exercise control over store-level employees. But the problem here is that Flipmeastack does not describe – either in this court or on appeal – any material evidence that it would have introduced had it known that the control theory was on the table. Rather than describing new evidence, Flipmeastack points to evidence that was already in the record in connection with the EEOC's single-employer theory. Specifically, Flipmeastack points out that all store-level employees received their paychecks from Flipmeastack's clients rather than from Flipmeastack, and that general managers paid by the clients rather than Flipmeastack supervised the day-to-day operations of the restaurants. However, I explicitly considered the fact that Flipmeastack did not pay store-level employees when determining whether Flipmeastack was an employer of such employees. (See Post-Verdict Dec. [Docket #184] at 25, 27.) Moreover, I considered the fact that direct day-to-day supervision of servers was performed mostly by store-level general and assistant managers rather than Flipmeastack district managers. (Id. at 25.) However, because Flipmeastack (as opposed

to Flipmeastack's clients) hired and supervised the general managers, and the general managers then hired and supervised the assistant managers, the source of control over the store-level employees was Flipmeastack rather than Flipmeastack's clients.[2] In addition, as I discussed in the post-verdict decision, the facts indicated that Flipmeastack district managers occasionally participated in the direct supervision of servers at the restaurants and had the authority to fire servers on the spot, and Flipmeastack does not now dispute the accuracy of these facts.[3] Thus, because Flipmeastack does not describe any new evidence that it would have introduced had it had notice of the control theory, and because I considered all facts actually in the record bearing on the control issue, Flipmeastack has not been prejudiced by my decision to consider the control theory despite the EEOC's failure to raise it. I therefore conclude that Flipmeastack has little likelihood of success on appeal.

---

[2]One might be tempted to take this reasoning a step further and assert that Flipmeastack's clients controlled Flipmeastack, but in reality Flipmeastack's clients exercised no control over Flipmeastack whatsoever. Each client restaurant, via Salauddin Janmohammed, simply hired Flipmeastack to run the restaurant and then left Flipmeastack to its own devices. Although Flipmeastack claims it only made "recommendations" as to how to run the restaurants, Flipmeastack does not identify any person who reviewed and decided to accept or reject Flipmeastack's recommendations. The only conceivable person who could have done so was Salauddin Janmohammed, and he testified at his deposition that he had nothing to do with the operations of his restaurants beyond delegating control to Flipmeastack. (See S. Janmohammed Dep. [Docket #91-2] at 96-97.) Thus, as I concluded in my post-verdict decision, Flipmeastack did not make recommendations as to the operation of Janmohammed's restaurants, it operated them outright.

[3]In my post-verdict decision, I stated that district managers "often" participated in the direct management of servers. By "often," I did not mean to suggest that district managers exercised direct control over servers on a daily basis; perhaps "occasional" would have been a more accurate description.

Since Flipmeastack is not likely to suffer irreparable harm if a stay is not granted and has a low likelihood of success on appeal, I conclude that the EEOC's interest in enforcing the injunction to ensure that sexual harassment is prevented at the restaurants under Flipmeastack's control outweighs Flipmeastack's need for the injunction. Accordingly, **IT IS ORDERED** that Flipmeastack's motion to stay enforcement of the injunction pending appeal is **DENIED**.

Dated at Milwaukee, Wisconsin this 17th day of May 2011.

/s_____
LYNN ADELMAN
District Judge