# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION<br>    Plaintiff,<br><br>  v.<br><br>MANAGEMENT HOSPITALITY OF RACINE, INC., et al.,<br>    Defendants. | Case No. 06-C-0715 |

## DECISION AND ORDER

This decision and order contains my findings of fact and conclusions of law regarding the EEOC's request to find Flipmeastack, Inc. and Salauddin Janmohammed in contempt for failing to comply with the injunction entered in this case on August 31, 2010.

## I.  BACKGROUND

The EEOC commenced this action on behalf of two servers employed at an IHOP restaurant in Racine, Wisconsin (the "Racine IHOP"), alleging that the servers were sexually harassed in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.  The EEOC alleged that three distinct but related defendants were liable for this harassment: (1) Management Hospitality of Racine, Inc. ("MHR"), a dissolved Illinois corporation that owned the Racine IHOP; (2) Salauddin Janmohammed, the sole shareholder of MHR and controlling owner of twenty-one other IHOP restaurants; and (3) Flipmeastack, Inc., a corporation owned and operated by Victoria Janmohammed, Salauddin Janmohammed's wife.  Flipmeastack provided management services to the

Racine IHOP and currently provides management services to seventeen of Salauddin Janmohammed's other restaurants.

The EEOC's sexual harassment claims were tried to a jury, and the jury found that the complaining servers were sexually harassed and that the "defendants" were liable for this harassment. I use scare quotes because the parties agreed that the three defendants could be treated collectively as the "employer" of the servers for purposes of trial and that I would determine the precise extent of each defendant's liability after trial. During post-trial proceedings, the parties agreed that MHR was one of the servers' employers but disputed whether Flipmeastack could also be considered an employer of the servers. I concluded that Flipmeastack was indeed an employer of the servers because it exercised control over the workplace at the Racine IHOP.

My conclusion that Flipmeastack was an employer of the servers at the Racine IHOP determined the scope of the injunctive relief I awarded. The EEOC requested an injunction designed to prevent sexual harassment of other Flipmeastack employees. Although the sexual harassment at issue in the present case occurred at the Racine IHOP, which Salauddin Janmohammed had sold prior to trial and which Flipmeastack no longer managed, the EEOC requested that the injunction apply to the remaining Janmohammed restaurants under Flipmeastack's management, since Flipmeastack exercised control over the workplace at each of these restaurants. I agreed with the EEOC and entered an injunction governing Flipmeastack's employment practices at each Janmohammed restaurant under its management.

One provision of the injunction required Flipmeastack to post a notice at all restaurants informing employees of the jury's verdict and their right to complain to both

Flipmeastack and the EEOC in the event they were subject to sexual harassment. (Injunction [Docket #185] ¶ 4.) To date, Flipmeastack has not complied with this provision, and the EEOC has requested that Flipmeastack be held in contempt. I held a contempt hearing on May 20, 2011, at which Victoria Janmohammed testified that Flipmeastack cannot post any notice at any restaurant unless Salauddin Janmohammed first approves it. She testified that although Salauddin Janmohammed knew that the injunction required Flipmeastack to post the notice in all restaurants, he refused to grant it approval to do so. Despite Salauddin Janmohammed's refusal to allow the notices to be posted, Flipmeastack continues to provide services to seventeen of his twenty-one restaurants.

After hearing Victoria Janmohammed's testimony, I ordered Salauddin Janmohammed to appear at a hearing and show cause why he should not be held in contempt as a person acting "in active concert or participation" with Flipmeastack and Victoria Janmohammed. See Fed. R. Civ. P. 65(d)(2)(C). This hearing was held on May 26, 2011. At the hearing, Salauddin Janmohammed confirmed that he knew that the injunction required Flipmeastack to post the notice at all restaurants under its management and that he was preventing Flipmeastack from doing so.

## II. DISCUSSION

I begin the discussion by noting that the present proceedings involve civil contempt rather than criminal contempt. Generally, civil contempt "is remedial, and for the benefit of the complainant," while criminal contempt "is punitive, to vindicate the authority of the court." Federal Trade Comm'n v. Trudeau, 579 F.3d 754, 769 (7th Cir. 2009) (internal quotations omitted). Civil contempt sanctions must either compensate the complainant for

losses caused by the contemptuous conduct or be designed to coerce the contemnor's compliance with a court order. Id. A coercive sanction must afford the contemnor an opportunity to "purge" his or her contempt, meaning that the contemnor can avoid punishment by complying with the court order. Id. In the present proceedings, the EEOC has not claimed that it has suffered any monetary losses as a result of the alleged contemptuous conduct. Instead, it is seeking to coerce Flipmeastack's compliance with the injunction's requirement to post the required notices in all restaurants under its management.[1]

To succeed on a request for civil contempt sanctions, the EEOC must demonstrate by clear and convincing evidence that the alleged contemnor has violated the express and unequivocal command of a court order. Trudeau, 579 F.3d at 763. The command at issue in the present case is that Flipmeastack post notices in the form attached to the injunction in a conspicuous location at each restaurant under its management, such that the notices can be easily seen by the employees at each restaurant. (The notices need not be posted in a location where customers can see them.) Although at an earlier point in this case Flipmeastack seemed to be taking the position that the injunction was equivocal as to whether the notice had to be posted in each restaurant rather than at Flipmeastack's corporate office, at the contempt hearing both Victoria and Salauddin Janmohammed

---

[1] Although the EEOC has not requested compensatory sanctions, it has requested that I impose a "penalty" for Flipmeastack's past noncompliance with the notice requirement. However, because such a penalty would be punitive, it could only be awarded after the conclusion of criminal contempt proceedings, which have not been held. See generally Federal Trade Comm'n v. Trudeau, 606 F.3d 382 (7th Cir. 2010) ("Trudeau II") (discussing the procedural requirements that must be followed before a court may impose criminal contempt sanctions).

testified that they understood that the order required notices to be posted at all restaurants served by Flipmeastack.[2] In any event, Victoria and Salauddin Janmohammed did not argue at the contempt hearing that they should not be found in contempt on the ground that the injunction's notice requirement is vague or ambiguous.

The next issues are whether Flipmeastack is in violation of the notice requirement and, if so, whether Salauddin Janmohammed is guilty of contempt for acting in active concert or participation with Flipmeastack. The "active concert or participation" language in Federal Rule of Civil Procedure 65(d)(2)(C) has been interpreted to mean that third parties can be brought within the scope of an injunction and held in contempt when they aid and abet a party's violation of the injunction. See Blockowicz v. Williams, 630 F.3d 563, 567 (7th Cir. 2010); Nat'l Spiritual Assembly v. Nat'l Spiritual Assembly, 628 F.3d 837, 848 (7th Cir. 2010). Thus, the questions are whether Flipmeastack has violated the notice requirement and whether Salauddin Janmohammed has aided and abetted this violation.[3]

The facts relating to these questions are largely undisputed. Shortly after the injunction was entered, Victoria Janmohammed, on behalf of Flipmeastack, asked Salauddin Janmohammed for permission to post the notices at the seventeen restaurants Flipmeastack was responsible for "overseeing." Salauddin Janmohammed refused to grant permission, and based on this refusal Flipmeastack determined that it would be unable to post the notices at the restaurants. However, Flipmeastack continued to provide

---

[2]The court reporter has not yet prepared the transcript of the hearings, and so I cannot provide page citations for the testimony summarized in the text.

[3]I treat Salauddin Janmohammed as a third party even though he is a party to this case because the injunction by its terms applies only to Flipmeastack.

5

management services to the restaurants, and Salauddin Janmohammed did not prohibit Flipmeastack from doing so.

Flipmeastack contends that it should not be found guilty of contempt because it had no authority to post the notices once Salauddin Janmohammed refused to allow Flipmeastack to post them. However, although Flipmeastack may have lacked authority to post the notices over Salauddin Janmohammed's objection, it certainly had control over whether it would continue to provide management services to the restaurants. And as I explained when I entered the injunction, the notices had to be posted so long as Janmohammed's restaurants utilized Flipmeastack's services. (Post-Verdict Dec. [Docket #184] at 32.) Thus, to be in compliance with the injunction, Flipmeastack should have informed Salauddin Janmohammed that if he did not grant Flipmeastack permission to post the notices Flipmeastack would have to terminate its relationship with the restaurants. Flipmeastack did not do so and continued overseeing the seventeen restaurants. This continued management of the restaurants without posting the notices was and continues to be a violation of the injunction. I therefore find Flipmeastack guilty of civil contempt.

For similar reasons, I find Salauddin Janmohammed guilty of civil contempt for aiding and abetting Flipmeastack's violation. Salauddin Janmohammed testified that he knew that the injunction required Flipmeastack to post the notices in any restaurant under its management. He also made statements during his testimony indicating that he knew that if he did not allow Flipmeastack to post the notices he would have to "discontinue [Victoria Janmohammed's] service," "get rid of Flipmeastack" or "remove [Victoria Janmohammed] from all the restaurants." Yet, despite this knowledge, he continued to allow Flipmeastack to manage the restaurants without posting the notices. This aided and

abetted Flipmeastack's violation, and therefore Salauddin Janmohammed is guilty of civil contempt.

Having found Flipmeastack and Salauddin Janmohammed in contempt, the next step is to fashion an appropriate coercive remedy. At the hearing, the EEOC asked that I impose a conditional fine against Flipmeastack and Salauddin Janmohammed, jointly and severally, for every day that the notice is not posted in all restaurants. I agree that a conditional daily fine is an appropriate sanction. In setting the amount of this fine, I consider "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." United States v. United Mine Workers of Am., 330 U.S. 258, 304 (1947). I also consider "the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant." Id. Taking these factors into account, I conclude that a conditional fine of $1,000 per day is appropriate. The harm threatened by allowing Flipmeastack to continue managing Janmohammed's restaurants without posting the notices is serious, in that the employees at these restaurants may be subjected to sexual harassment and find themselves without an adequate complaint mechanism. There is also a risk that Flipmeastack will discourage employees from reporting sexual harassment. A conditional fine of $1,000 per day should be sufficient to coerce compliance with the notice requirement without being unnecessarily burdensome. A method for monitoring Flipmeastack and Salauddin Janmohammed's compliance is specified below.[4]

---

[4] At the hearing on May 26, 2011, counsel for Flipmeastack and Salauddin Janmohammed did not object to the monitoring scheme proposed by the EEOC.

## III.  CONCLUSION

For the reasons stated, I **FIND** Flipmeastack and Salauddin Janmohammed guilty of civil contempt for violating and aiding and abetting the violation of Paragraph 4 of the injunction entered on August 31, 2010.

**IT IS ORDERED** a copy of the notice attached to the injunction be posted in a conspicuous location at each of the seventeen restaurants serviced by Flipmeastack by June 2, 2011.  For every day after June 2, 2011 that the notices are not posted at all seventeen restaurants, Flipmeastack and Salauddin Janmohammed shall, jointly and severally, incur a fine of $1,000.

For purposes of monitoring compliance with this order, **IT IS FURTHER ORDERED** that Flipmeastack and Salauddin Janmohammed provide the EEOC with a list identifying the name, address and phone number of each of the seventeen restaurants serviced by Flipmeastack.  This list shall be provided to the EEOC by June 2, 2011.  Flipmeastack shall also provide the EEOC with sworn monthly certifications stating that the notices are posted at all seventeen restaurants, and it shall attach to each certification dated digital photos depicting the notices and their locations at each restaurant.  The first certification is due on June 15, 2011, and subsequent certifications are due by the 15th of each month in which the injunction is in effect.  Finally, the EEOC shall be allowed to conduct random inspections of the seventeen restaurants during business hours to ensure that the notices have been posted in accordance with the injunction and this order.  Flipmeastack and Salauddin Janmohammed are responsible for making sure that the managers at each

restaurant are aware of the EEOC's right to conduct these inspections, and the EEOC shall ensure that its representatives carry appropriate identification.

Dated at Milwaukee, Wisconsin this 31st day of May, 2011.

/s_____
LYNN ADELMAN
District Judge